UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SARAH E. WOZNIAK,

    Plaintiff,

  v.                                                Case No. 20-CV-740-SCD

KILOLO KIJAKAZI,[1]
**Acting Commissioner of Social Security,**

    Defendant.

## DECISION AND ORDER

Sarah E. Wozniak applied for social security disability benefits based on radiating lower back pain that remains despite multiple surgeries. After a hearing, an administrative law judge denied Wozniak's claim, finding that although she had severe degenerative disc disease, she was still capable of performing sedentary work with certain physical limitations. Wozniak seeks judicial review of that decision, arguing that the ALJ erred in evaluating Wozniak's medical history, treatment, and diagnostic imaging evidence. I agree that the ALJ committed reversible error in not addressing certain medical evidence contrary to his conclusion that Wozniak was not as limited as she alleged. Accordingly, I will reverse the decision denying Wozniak disability benefits and remand the matter for further proceedings.

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021. Accordingly, Kijakazi is substituted for Andrew M. Saul as the named defendant in this action pursuant to Fed. R. Civ. P. 25(d).

# BACKGROUND

Wozniak began experiencing lower back pain and left leg radiculopathy in 2001, when she was just eighteen years old. *See* R. 613.[2] That same year she underwent a lumbar laminectomy, her first of several back and neck surgeries. *Id.* Wozniak was able to work despite her back pain, mostly performing office-type work in the trucking industry. *See* R. 40–45, 393–404. In 2011, she developed significant lower back pain and underwent lumbosacral fusion surgery, which had to be revised in 2014. R. 613.

Following that revision surgery, Wozniak applied for disability insurance benefits, alleging that her chronic back issues prevented her from working. *See* R. 175–78. The Social Security Commissioner denied Wozniak's application initially and again upon her request for reconsideration. *See* R. 175. Wozniak then requested a hearing before an ALJ. *See id.* Prior to the hearing, however, Wozniak's condition improved, and she returned to work in July 2016 as a dispatcher. *See* R. 85–87, 184. Wozniak requested, and the ALJ granted, a "closed" period of disability from July 2014 until July 2016. *See* R. 69–116, 175–85.

The improvement did not last. Wozniak's back issues flared up a few months later, requiring her to take a lot of time off work. R. 47–48, 57. On the verge of being fired for missing too many days, she resigned in February 2017. R. 47, 59.

In November 2017, Wozniak reapplied for disability insurance benefits and added a claim for supplemental security income. R. 13, 319–31. She alleged that she became disabled on February 2, 2017 (her last day of work). R. 319–20, 330, 360, 373. Wozniak asserted that she was unable to work due to multiple back and neck surgeries, degenerative disc disease,

---

[2] The transcript is filed on the docket at ECF No. 17-2 to ECF No. 17-14.

and arthritis. R. 373. The Social Security Commissioner denied Wozniak's applications initially and upon reconsideration. *See* R. 117–70. The state-agency medical consultant who reviewed the record at the initial level of review opined that Wozniak could perform a reduced range of medium work. R. 122–26, 133–37. At the reconsideration level, the state-agency medical consultant opined that Wozniak could perform work at the light exertional level with certain exertional, postural, and environmental limitations. R. 150–52, 164–66. After the Commissioner denied her applications at the state-agency level, Wozniak requested another hearing. R. 212–13.

On July 3, 2019, a different ALJ held an evidentiary hearing on Wozniak's disability applications. *See* R. 29–68. Wozniak testified at the hearing. *See* R. 38–62. Wozniak told the ALJ that she was unable to work or perform normal activities because of pain in her lower back that radiated down her left leg and, on bad days, also her right. R. 47–58, 60. She explained that the pain made it difficult to walk more than half a block, lift, kneel, squat, and stand. R. 52. She also reported difficulty performing any physical activity, such as doing the dishes, carrying a load of laundry, or showering. *Id.* Wozniak estimated that she could stand for only ten minutes at a time, sit for about forty-five minutes, and lift and carry at most a gallon of milk. R. 54–55. Wozniak explained that she could not handle the prolonged sitting required in a sit-down job; she needed to be able to alternate between sitting, lying down, and standing as needed. R. 56–57. Wozniak also explained that she sometimes had bad days where she was unable to do much of anything. R. 57.

The ALJ also heard testimony from a vocational expert. *See* R. 62–66. The vocational expert testified that a hypothetical person with Wozniak's age (thirty-three at the time of her applications), education (a high school degree and a few years of college courses), and work

3

experience (years performing office work within the commercial shipping industry) could perform her past jobs as a manifest clerk (as generally performed) and a data entry clerk if she were limited to a restricted range of sedentary work. R. 63–65. However, the vocational expert testified that the hypothetical person could not work if she needed to be able to alternate between sitting and standing at will while remaining on task. R. 65. According to the vocational expert, employers would tolerate employees to be off task no greater than fifteen percent of the workday and to miss no more than one or one-and-a-half days of work per month, on average. R. 65–66.

On July 24, 2019, the ALJ issued a written decision finding that Wozniak was not disabled. *See* R. 10–28. The ALJ applied the standard five-step analysis. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ determined that Wozniak had not engaged in substantial gainful activity since her alleged onset date. R. 16. The ALJ determined at step two that Wozniak had one severe[3] impairment: degenerative disc disease. R. 16–18. At step three, the ALJ determined that Wozniak did not have an impairment, or a combination of impairments, that meets or medically equals the severity of a presumptively disabling impairment. R. 18.

The ALJ next assessed Wozniak's residual functional capacity—that is, her maximum capabilities despite her limitations, *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ found that Wozniak had the RFC to perform sedentary work with several additional limitations: occasional climbing of ramps or stairs; no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, or crawling; no kneeling; no working at unprotected heights;

---

[3] An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

4

occasional work with moving mechanical parts; occasional exposure to dust, odors, fumes, and pulmonary irritants; and occasional exposure to vibration. R. 18. In assessing that RFC, the ALJ considered Wozniak's subjective allegations, the medical evidence, and the medical opinion evidence and prior administrative findings. *See* R. 18–22.

The ALJ determined that Wozniak's statements about the intensity, persistence, and limiting effects of her symptoms were "inconsistent because the medical evidence of record regarding [her] degenerative disc disease support[ed] the [RFC assessed by the ALJ]." R. 19. The ALJ acknowledged that Wozniak had received treatment for severe low back pain that radiated down both legs. *Id.* (citing Exhibit B2F). However, according to the ALJ, Wozniak's treatment was "relatively routine" until April 2019. R. 19. In 2017, Wozniak received three lumbar epidural steroid injections and reported seventy to eighty percent pain relief. *Id.* (citing Exhibit B3F/2, 26). The ALJ characterized Wozniak's physical examinations during that period as "mixed," with some normal findings and some abnormal ones, like pain to palpation, tenderness in the lumbar spine, a positive slump test on the left side, slight motor weakness in her left lower extremity, and a positive straight leg raise test on the left. R. 19 (citing Exhibits B1F/3, 6, 17; B2F/11, 23, 29, 36; B3F/9, 13; B4F/3; B5F/4, 11; B7F/5, 12).

The ALJ indicated that diagnostic evidence also supported the assessed RFC. R. 19. According to the ALJ, "an EMG nerve study from December 2018 showed chronic left L5 radiculopathy, stable hardware from L4-S1, no critical foraminal stenosis at L5-S1 but moderate stenosis at L3-4 in the canal." *Id.* The ALJ also noted that a pelvis x-ray "showed sclerosis on the right." *Id.* (citing Exhibit B6F).

As the ALJ acknowledged, Wozniak's treatment intensified in April 2019, when she had fusion surgery on her sacroiliac joint (the hip joint that links the pelvis to the lower spine).

5

R. 19 (citing Exhibits B8F; B9F; B10F). The ALJ noted that, a day after the surgery, Wozniak "was weight bearing 50 percent on her lower right extremity and her range of motion and strength were within normal limits bilaterally." R. 19–20 (citing Exhibit B8F/10). The ALJ also noted that Wozniak reported at a follow-up appointment two weeks after surgery that "she was 'very happy' with the result with near complete resolution of her right sacroiliac pain." R. 20 (citing Exhibit B9F).

After explaining the basis for each of the assessed limitations, the ALJ returned to the objective medical evidence. *See* R. 20. The ALJ determined that "the objective evidence of record [did] not support that [Wozniak was] more functionally limited than [the assessed RFC]." R. 20. According to the ALJ, Wozniak's treatment during the relevant period was "generally routine and conservative in nature." *Id.* The ALJ noted that Wozniak reported significant pain relief following a few epidural steroid injections. *Id.* (citing Exhibit B2F). Also, the ALJ noted that Wozniak received other forms of treatment for her allegedly disabling symptoms but found that the treatment was "generally successful in controlling those symptoms." R. 20. In the ALJ's view, Wozniak's need for fusion surgery was "offset by the fact that . . . the surgery was successful in relieving her symptoms." *Id.* The ALJ again cited the two-week follow-up appointment where Wozniak reported being "very happy" with the surgery results. *Id.* (citing Exhibit B9F). Overall, the ALJ determined that the objective medical evidence did not support the degree of limitation Wozniak alleged. R. 20.

The ALJ next addressed the opinion evidence. The ALJ did not find persuasive the initial state-agency reviewing consultant's opinion that Wozniak could perform a reduced range of medium work. R. 21. As for the state-agency reviewing consultant at the reconsideration level, the ALJ found persuasive the consultant's opinion that Wozniak could

6

perform a reduced range of light work. *Id.* However, the ALJ explained that he adopted "more restrictive exertional limitations and postural limitations based on a combination of [Wozniak's] impairments and taking into account the increased symptomology during the relevant period and the persistent needs for epidural steroid injections." *Id.*

Continuing the sequential evaluation process, the ALJ determined at step four that Wozniak was able to perform her past relevant work as a manifest clerk and a data entry clerk. R. 22. Based on those findings, the ALJ determined that Wozniak had not been under a disability from her alleged onset date through the date of the decision. R. 22–23.

The Social Security Administration's Appeals Council denied Wozniak's request for review, R. 1–6, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On May 13, 2020, Wozniak filed this action seeking judicial review of the Commissioner's final decision denying her claim for social security disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was randomly assigned to me, and all parties subsequently consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 6, 7. It is now fully briefed and ready for disposition. *See* ECF Nos. 26, 33, 40.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

7

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

Conversely, the ALJ's decision must be reversed "[i]f the evidence does not support the conclusion," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)), and reviewing courts must remand "[a] decision that lacks adequate discussion of the issues," *Moore*, 743 F.3d at 1121 (citations omitted). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994– 95 (7th Cir. 2003) (citations omitted).

In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing

*Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Wozniak v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Wozniak maintains that the RFC assessment is not supported by substantial evidence because the ALJ ignored and misrepresented Wozniak's medical history, overstated the effectiveness of the treatment Wozniak did receive, and erred in evaluating the diagnostic imaging evidence.

### I. History and Effectiveness of Treatment

Wozniak first argues that the ALJ provided an incomplete and inaccurate recounting of her medical history. According to Wozniak, the ALJ ignored her multiple, failed back surgeries, improperly characterized her recent treatment as "generally conservative and routine," and failed to explain how her pre-surgical treatment was "generally successful in controlling [her] symptoms." Wozniak further contends that the ALJ "cherry picked" the record when discussing the effectiveness of her epidural steroid injections and recent sacroiliac fusion surgery.

Although the Seventh Circuit has repeatedly said that an ALJ does not need to "mention every snippet of evidence in the record," it has also explained that "the ALJ must

9

connect the evidence to the conclusion" and "may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ here did not address important information concerning Wozniak's medical history. Wozniak has been experiencing lower back pain since she was eighteen years old. *See* R. 613. She underwent multiple back surgeries between 2001 and 2014, R. 582, 613, and was awarded disability benefits for her back issues for the closed period between July 2014 and July 2016, R. 175–85. The fourth back surgery appeared to alleviate Wozniak's pain, as she was able to return to full-time work. *See* R. 85–87, 184. However, the improvement didn't last. A few months after returning to work, Wozniak experienced a recurrence of lower back pain that radiated down both legs, which led her to quit her job and reapply for disability benefits. R. 47–48, 319–31, 613. Although this evidence pre-dates the alleged onset of disability for the current claim, Wozniak's treatment history is relevant because it demonstrates multiple failed surgeries, only temporary improvement, and a finding of disability based on the same impairments alleged here. The ALJ, however, did not discuss this medical history or consider how it informed the effectiveness of treatment during the relevant period.

The ALJ also failed to build an accurate and logical bridge between the treatment Wozniak did receive since the onset of her most recent alleged disability and his conclusion that Wozniak was not more functionally limited than the assessed RFC. Wozniak first tried conservative care—including activity modification, various medications, and physical therapy—but those methods provided only minimal relief, and she continued to have radicular signs and symptoms. R. 553, 607. After failing conservative care, she turned to powerful narcotic pain medication like Oxycodone and lumbar epidural steroid injections. *See* R. 535–

10

70, 593–95, 599–601, 603–04, 606–16. Those more aggressive forms of treatment provided some relief of Wozniak's right sacroiliac pain, but the injections provided "no response whatsoever on the left side." *See id.* Also, on at least one occasion Wozniak's insurance provider made her wait several months before it approved a repeat injection. *See* R. 594.

Wozniak's improvement following the injections did not, as the ALJ suggested, demonstrate that she was not as limited as alleged. Rather, this limited improvement qualified Wozniak for sacroiliac fusion surgery, *see* R. 612, which she underwent in April 2019, *see* R. 634–958. The record therefore shows that medical providers treated Wozniak's back impairment progressively during the relevant period; her care was not, as the ALJ characterized it, generally routine and conservative. *See Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) (finding that the claimant's treatments, which included narcotic pain relievers, steroid injections, and major surgery, "belie the ALJ's conclusion that [the claimant] was treated conservatively."). Likewise, the ALJ failed to explain how he reconciled his conclusion that Wozniak's pre-surgical treatments were generally successful in controlling her symptoms with the fact that Wozniak continued to exhibit clinical signs and symptoms such as a positive slump test, tenderness in the lumbar spine, slight motor weakness in her left leg, and a positive straight leg raise on the left. Nor did the ALJ reconcile that conclusion with the fact that Wozniak and her doctors subsequently pursued more aggressive treatment.

The Commissioner argues that treatment consisting of narcotic pain medication and epidural steroid injections "can be described as 'conservative' and may undermine a claimant's subjective allegations." ECF No. 33 at 9–10. She cites three cases in support of this argument, but all three are distinguishable from our case because, unlike Wozniak, those claimants did not undergo surgery. *See Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014)

11

(relying on an Eighth Circuit case to conclude that epidural steroid injections "have been characterized as 'conservative treatment'"); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming adverse credibility finding based on "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session"); *Vrooman v. Comm'r of Soc. Sec.*, No. 19-CV-1452-SCD, 2020 WL 4815810, 2020 U.S. Dist. LEXIS 149685, at *13 (E.D. Wis. Aug. 19, 2020) (finding reasonable ALJ's characterization of medication management and injection therapy as "routine" treatment), *aff'd Vrooman v. Kijakazi*, No. 20-2939, 2021 WL 3086196, 2021 U.S. App. LEXIS 21699 (7th Cir. July 21, 2021). Moreover, in *Olsen*, one of the claimant's orthopedic surgeons described the epidural steroid injections as "conservative." *Olsen*, 551 F. App'x at 875. In contrast, the anesthesiologist who administered Wozniak's epidural steroid injections indicated that she received the injections *because she had "failed extensive conservative care."* R. 553, 559 (emphasis added). This indicates a professional's view that the treatment being provided was anything but conservative.

The ALJ also placed undue emphasis on a two-week, post-op clinic note that states, "[Wozniak] is very happy with the surgical results with near complete resolution of her sacroiliac pain." R. 752–53. The ALJ, however, failed to acknowledge that during that same appointment Wozniak still had "left chronic radiculitis for which she [was] considering a spinal cord stimulator" that was confirmed by a positive straight leg raise on the left. *Id.* Wozniak's treatment provider also encouraged Wozniak to "slowly start increasing her activity" and to follow up in six weeks. R. 753. At that follow-up appointment, Wozniak reported an exacerbation of her right sacroiliac pain when she tried to increase her activity (i.e., by caring for her toddler full-time). R. 755–56. Wozniak's doctor referred Wozniak to

12

physical therapy, prescribed her pain killers (tramadol), and advised her to limit lifting her child. R. 756. And that's where the medical records end. These latest records contradict the ALJ's conclusion that Wozniak's fusion surgery relieved her symptoms; instead, they show that the positive effects of the surgery already were wearing off. The ALJ erred by not discussing them in his decision. *See Denton*, 596 F.3d at 425 (holding that an ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.") (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)).

The Commissioner suggests that the ALJ's failure to discuss Wozniak's most recent post-surgical records was harmless because the ALJ acknowledged Wozniak's ongoing radiculopathy and accounted for that symptom in his RFC assessment. An ALJ's error is harmless only if the reviewing court "can predict with great confidence that the result on remand would be the same." *Schomas*, 732 F.3d at 707–09. My review of the record does not convince me that the result would be the same considering all of Wozniak's post-surgical records. Although the ALJ explained that the assessed postural and environmental limitations accommodated Wozniak's ongoing radicular symptoms and left-side lumbar radiculopathy, R. 20, it is unclear how the RFC assessment accommodates Wozniak's main limitation—prolonged sitting, R. 56–57. Moreover, given the recent records showing an exacerbation of symptoms with increased activity, it is also unclear whether Wozniak would be capable of sustained full-time work.

In sum, the ALJ erred in evaluating Wozniak's medical history and the effectiveness of her treatment.

## II. Diagnostic Imaging Evidence

Wozniak also argues that that ALJ erred in evaluating the diagnostic imaging evidence in the record. According to Wozniak, the ALJ erroneously claimed that an electromyography test and nerve conduction study from December 2018 revealed moderate stenosis at L3-L4. She's right. The test happened in October 2018 (not December), was an MRI (not an EMG), and revealed "[m]oderate to severe canal stenosis at L3-L4" (not just moderate stenosis). R. 616, 760. Wozniak contends that the ALJ impermissibly "played doctor" when he interpreted this evidence without the benefit of a medical expert.[4] The Commissioner argues that the updated diagnostic imaging evidence did not reveal any new, significant medical diagnoses precluding the ALJ from relying on the opinions of the state-agency medical consultants. In other words, the "new" evidence merely revealed what the consultants already knew: Wozniak suffered from a long history of back issues, including chronic radiculopathy and some stenosis in her lumbar spine.

The Commissioner should re-examine the diagnostic imaging evidence on remand. It is undisputed that the ALJ misrepresented the results of the most recent diagnostic imaging evidence. Although it is unclear how those misrepresentations may have affected the ALJ's decision (if it all), that determination is best left to the Commissioner (possibly after consulting a medical expert). The new imaging results do not appear to be a smoking gun. That said, those results did support the decision to pursue the sacroiliac fusion surgery, and Wozniak's doctor indicated after reviewing the imaging results that Wozniak was "a good candidate for spinal cord stimulator trial" and likely would "require more back surgeries down

---

[4] The state-agency medical consultants issued their opinions several months prior to the recent diagnostic imaging evidence.

14

Case 2:20-cv-00740-SCD   Filed 09/13/21   Page 14 of 15   Document 41

the road." R. 612. At a minimum, therefore, the diagnostic imaging results were partially consistent with Wozniak's allegedly disabling symptoms.

## CONCLUSION

For all the foregoing reasons, I find that the ALJ committed reversible error in evaluating Wozniak's medical history and the effectiveness of her treatment. Accordingly, I **REVERSE** the Commissioner's decision and **REMAND** this action pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. On remand, the Commissioner should also address Aguilar's other claimed errors relating to the recent diagnostic imaging evidence. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 13th day of September, 2021.

_____
STEPHEN C. DRIES
United States Magistrate Judge